THE PEOPLE OF THE STATE OF NEW YORK ex rel. WILLIAM J.
JUDGE and PEOPLES GAS LIGHT AND COKE COMPANY OF
BUFFALO, Relators, *v.* PUBLIC SERVICE COMMISSION OF THE
STATE OF NEW YORK, SECOND DISTRICT, Respondent.

THE CITY OF BUFFALO, Intervenor, Respondent.

Third Department, July 8, 1920.

Gas and electricity — proceeding to fix gas rates — determination
of legitimate expenditures in comparison with those of other com-
panies — consideration by Public Service Commission of facts
dehors record — denial of opportunity to be heard — Public Service
Commissions Law, section 72, construed.

The Public Service Commission, in fixing the maximum rates chargeable by
a gas company which proved that its expenditures for labor and mainte-
nance in certain years amounted to certain sums, should not estimate the
reasonable charges allowable to the gas company by taking into considera-
tion the operating expenses of other gas companies in the State during the
same period where no official reports or statements relating to the opera-
tion of the other companies were received in evidence and the relators
had no knowledge that comparisons were to be made with companies of
other cities and they had no opportunity to explain the conditions existing
in such other cities or to refute or overcome the inferences which were
drawn by the Commission.

As section 72 of the Public Service Commissions Law provides that " a
person or corporation shall have an opportunity to be heard in respect to
the matters complained of," the Commission in fixing rates chargeable by
public service corporations cannot base its order on facts *dehors* the record
concerning which such person or corporation has no knowledge until after
the order has been made and thus has had no " opportunity to be heard "
in respect thereto.

CERTIORARI issued out of the Supreme Court and attested
on the 29th day of August, 1919, directed to the Public Service
Commission of the State of New York, Second District, com-
manding them to certify and return to the office of the clerk
of the county of Albany all and singular their proceedings had
in fixing rates for manufactured gas in the city of Buffalo.

*Kenefick, Cooke, Mitchell & Bass* [*Daniel J. Kenefick* of
counsel], for the relators.

*William S. Rann, Corporation Counsel* [*Frederic C. Rupp*
of counsel], for the respondent, city of Buffalo.

COCHRANE, J.:

The relator Judge is engaged in the business of manufacturing and selling gas for light, heat and power in the city of Buffalo. He owns certain property in connection with said business and leases other property from the other relator, Peoples Gas Light and Coke Company.

On April 27, 1918, Mr. Judge filed with the Public Service Commission a schedule of rates for gas to be furnished to the city of Buffalo and its inhabitants, increasing the price to private consumers from one dollar and twenty cents to one dollar and sixty-five cents for each 1,000 cubic feet and increasing the price to the municipality from ninety cents to one dollar and sixty-five cents for each 1,000 cubic feet. On complaint of the city against the proposed increase hearings were had and testimony taken and the Public Service Commission made an order fixing the price at one dollar and twenty-five cents for each 1,000 cubic feet to individuals and one dollar and twenty cents for each 1,000 cubic feet to the municipality.

The Commission found the value of the property of Mr. Judge to be $3,000,000 and estimated that $200,000 was a reasonable amount for operating expenses, making what is commonly known as the rate base of $3,200,000. No criticism is made by relators of this amount on this proceeding. The Commission estimated that the rates allowed would yield a return of five and twelve one-hundredths per cent on $3,200,000.

There was introduced in evidence before the Commission statements containing details of the revenues and expenses of the business for each of the five years from 1914 to 1918, inclusive. The official report of the operations of the property for the calendar year 1918 showed an expenditure for labor in that year of $261,310 and for repairs to gas mains and services of $182,784. The Commission in fixing the rate accepted all other statements in that report except that it reduced the labor expenditure to $161,561 and the expenditure for repairs to gas mains and services to $44,900, a total reduction in those two items of $237,633 from the operating expenses of one year.

The order of the Commission fixing the rates recites that

it is based " on the facts found and for the reasons stated in the accompanying opinion." Such opinion (*Buck* v. *Judge*, 21 State Dept. Rep. 85), therefore, partakes of the nature of a decision with findings of fact and on its face it shows conclusively that in making the material reductions above mentioned the Commission took into consideration rates in other cities and percentages of increase for cost of labor and maintenance in such cities during the period of five years which was the period selected for the purpose of comparison. In fact it is stated by the Commission: " That in arriving at such a rate [the rate fixed by the Commission herein] we can be guided also to some extent by rates prevailing in other communities of comparable size and location."

The cities of Rochester, Utica, Syracuse, Albany and Troy were selected as a basis for comparison and detailed computations were made in respect to gas operations in those cities. After making a tabulation showing the percentage of increase for labor expenditure in each of the five cities from the year 1914 to 1918, inclusive, the Commission concludes as follows: " It would seem that an increase of 40 per cent over the 1914 charges would be a fair basis for estimating a reasonable charge for a current year, particularly in view of the fact that the cost in 1914 was about two and one-half times that of the company with the next lower charge under this caption." The labor expenditure of Mr. Judge in 1914 was $115,401, a forty per cent increase of which gives $161,561, which is the amount the Commission in fixing the rates allowed for labor expenditure in 1918 instead of $261,310 actually expended.

After making a similar tabulation in respect to the five cities mentioned for the five years in question in respect to the repairs to gas mains and services and stating that the Buffalo property includes 449 miles of mains, the Commission concludes that $100 per mile is a fair allowance for maintenance, thereby reducing to $44,900 the item of $182,784 actually expended. It is by making these material reductions in the manner indicated that the Commission determines that the rates allowed by it will produce five and twelve one-hundredths per cent on the rate base.

The relators had no knowledge that comparisons were to be made with these other cities. No official reports or state-

ments of any kind pertaining to gas operations in those cities were received in evidence. It is very clear that the Commission in making its determination took into consideration matters of which the relators had no knowledge or information. The facts so considered were vital to the determination. They constitute the foundation on which such determination is based. Clearly it was the right of the relators to have an opportunity to explain the conditions pertaining to such other cities or to show that those cities were not typical or representative instances or to introduce such evidence as they might desire to refute or overcome the inferences which not only might be drawn but which were actually drawn by the Commission and which entered into and became an integral part of the order reducing the rates. The relators have been deprived of their right to meet and overcome evidence of such importance that it forms the groundwork of the order constituting their grievance. This is not in harmony with the spirit and purpose of the statute. (*People ex rel. Binghamton L., H. & P. Co.* v. *Stevens,* 203 N. Y. 7, 26; *Village of Saratoga Springs* v. *Saratoga Gas, etc., Co.,* 191 id. 123, 148; *People ex rel. Olin* v. *Hennessy,* 159 App. Div. 814, 817; *People ex rel. City of New York* v. *Stillings,* 138 id. 168; *People ex rel. Joline* v. *Willcox,* 134 id. 563.) The last case was reversed in 198 New York, 433, but on a point not bearing on the force of the opinion as affecting the question here considered. The provision of section 72 of the Public Service Commissions Law pertaining to this proceeding that a " person or corporation shall have an opportunity to be heard in respect to the matters complained of " means nothing if the order is based on facts *dehors* the record concerning which such person or corporation has no knowledge until after the order has been made and no " opportunity to be heard " in respect thereto.

On their application for a rehearing the relators specifically complained of this comparison with other cities and that they had been deprived of their right to examine witnesses and to submit evidence concerning the conditions prevailing in such cities, and in respect to the gas plants therein. The application for a rehearing was denied. We think the relators have been deprived of a substantial right and that justice requires that they should have a rehearing.

The determination should be annulled, with fifty dollars costs and disbursements, and the proceeding remitted to the Commission.

All concur.

Determination annulled, with fifty dollars costs and disbursements, and proceeding remitted to the Commission.